CITY OF OMAHA, APPELLEE, v. PHILADELPHIA MORTGAGE & TRUST COMPANY, APPELLANT.

FILED FEBRUARY 15, 1911.　No. 16,297.

1. **Municipal Corporations: REPAIR OF SIDEWALKS: LIABILITY OF ABUTTING PROPERTY OWNERS.** The act of 1887 (laws 1887, ch. 10, sec.

69; Comp. St. 1901, ch. 12a, sec. 109) governing cities of the metropolitan class made it the duty of the owners of buildings fronting upon a street of the city to keep the sidewalks adjacent to the buildings in repair; but such owners were not liable for damages caused by defects in such sidewalks until the city authorities notified them of such defects and required them to repair the same.

2. ———: DEFECTS IN STREETS: LIABILITY OF ABUTTING PROPERTY OWNERS. If the owner of city lots constructs a building thereon adjacent to a street of the city, and in such construction excavates a large space under the street to be used as a room in connection with said building, and so maintains the same for several years, it will be presumed that such excavation was made with the consent of the authorities of the city, and upon the implied condition that such excavation shall be maintained in proper and safe condition for travel along the street and the walks thereon; and the owner of the property will be liable for damages caused by his neglect to so maintain said excavation.

3. ———: ———: ———. A purchaser of such property upon foreclosure sale, who takes possession and rents the property and permits the same to remain for a long time in an unsafe condition will be held to have notice of the existence and purpose of the excavation and its condition, and is liable for damages caused thereby.

4. ———: ———: ———. If the city is compelled to pay a judgment for damages because of such neglect of the owner of said property in an action of which the owner has notice with the privilege to defend the same, the city may recover over from the owner of the property.

5. Pleading: SUFFICIENCY. Allegations of the petition stated, and *held* to be sufficient to support the findings and judgment.

APPEAL from the district court for Douglas county: GEORGE A. DAY, JUDGE. *Affirmed.*

*William Baird & Sons,* for appellant.

*H. E. Burnam, I. J. Dunn* and *J. A. Rine, contra.*

SEDGWICK, J.

A judgment was recovered against the city of Omaha for damages caused by falling through an opening in the

walk along the property owned by this defendant. After-
wards the city brought this action against the defendant
to recover the amount of the same judgment, interest and
costs. Upon trial in the district court for Douglas county
without a jury, the court found in favor of the plaintiff
and entered judgment for the amount claimed. The de-
fendant has appealed.

It appears from the evidence, a large part of which is
contained in the stipulation of facts, that 25 or 30 years
ago one Peter Goos erected a hotel building on the lots in
question, and excavated an opening called an "area"
along the side of said building 25 or 30 feet in length and
several feet in width under the sidewalk. Afterwards he
mortgaged the building to this defendant to secure an
indebtedness, and the defendant foreclosed the mortgage,
and upon the foreclosure sale purchased the property,
and so became the owner thereof. The defendant there-
upon leased the property from time to time for hotel pur-
poses, and it was being so occupied by the tenant of this
defendant at the time the accident occurred, which was
the occasion of the damages recovered in the judgment
against the city. It does not appear from the evidence
when nor by whom the opening in the walk over the area
was made, and the city authorities had not notified the
defendant to repair the defect in these openings before
the accident occurred.

1. It is first insisted by the defendant that the owner
of the property is not liable for defects in the sidewalk ad-
joining the property without having first been notified by
the city of such defects and given opportunity to repair
the same. The statute in force at the time of the acci-
dent provided that "in case the owner or owners of any
such lot, lots or lands abutting on such street or portion
thereof, shall fail to construct or repair such sidewalks in
the manner and within the time as directed and required
by the council in each case after having received due
notice to do so, they shall be liable for all damages or
injuries occasioned by reason of the defective or danger-

ous condition of any such sidewalks." Comp. St. 1901, ch. 12a, sec. 109. It appears, therefore, that under the provisions of the statute as it then existed the owner of property in the city of Omaha was required to keep the walk adjacent to the property in repair, and if damages were suffered by reason of his failure to do so he was liable for such damages, but only upon condition that he had been notified of the defect and required by the city to repair the walk. Therefore, so far as ordinary walks are concerned, the contention of the defendant should be sustained.

2. It appears from the evidence, as before stated, that this area under the sidewalk was constructed with the hotel building, but there is no evidence in the record as to the purpose of the openings in the covering of this area. The defect in these openings was the cause of the accident, and it is contended that, they being in the sidewalk adjoining the hotel building, the defendant would not be liable for neglect to repair the same unless notified by the city and required to so repair them. In this connection the defendant insists that it had no notice or knowledge of the defect in these openings, and is therefore not liable for such damages. There is no evidence in the record that there was any application to the city authorities for permission to construct this area, or that any such permission was given, and it is argued that there cannot therefore be implied any agreement or obligation on the part of the owner of the property to maintain the area and its covering in a proper and a safe condition. We cannot, however, presume that the defendant or its grantor constructed this area without the knowledge and at least implied consent of the city authorities. It must therefore be presumed that the city authorities consented to the construction of this area, and that consent was upon the implied condition that the owner of the property would maintain it in a proper and safe condition. This area was also of such a character and of such dimensions that the defendant must be held to have known of

its existence at all times, and to have known of the implied agreement on the part of the owner of the property, who constructed the area and to whose rights and liabilities it succeeded, that the same should be kept in a proper and safe condition. We think, therefore, the statute then in existence in regard to the maintenance of ordinary sidewalks has no application in this case.

The case of *City of Lincoln v. First Nat. Bank*, 67 Neb. 401, is like this in some of its facts. The bank had bought the property at sheriff's sale on foreclosure of a mortgage which it held thereon. There was an excavation under the walk adjoining the building upon the property, and there were coal holes through the covering of the excavation. Through some defects in the covering of these coal holes, a woman fell through one of them and was injured and recovered a judgment against the city. The city sued the bank to recover the amount of the judgment and costs. The difference between the two cases consists in the following facts: In the Lincoln case, the sheriff's deed upon the foreclosure was dated 32 days and recorded 20 days before the accident. The bank had not taken possession of the property, nor assumed to exercise any control over it, and, in fact, was not aware of the excavation under the walk, nor of the coal holes through the covering of the excavation. In the opinion the case of *Irvine v. Wood*, 51 N. Y. 224, is cited, and it is said that it is there "held to devolve upon both landlord and tenants to see that an excavation under the street was made safe for passers." It was also said in the opinion: "The numerous decisions as to the respective liabilities of lessor and lessee in such cases show that the owner's liability, where it exists, is not as owner, but as creator or continuer of a nuisance." In the case at bar, the defendant had owned, occupied and leased the premises for several years before the accident occurred. The area, which was constructed for a ten-pin alley, constituted a large room under the sidewalk. It is impossible to believe that the defendant did not know of its existence. In fact, it was of such a nature that the law

did not allow the defendant to plead ignorance of its existence. In the absence of any evidence to the contrary, the presumption is, as before stated, that the city consented to the construction of the area, and that the condition was that its covering should be kept in safe and proper condition. It appears, however, from the Lincoln case, *supra,* that if the city had not consented to its construction, and the owner of the property created the excavation without properly protecting it, or so maintained the excavation after it had been created, he would be in no better position than if he had contracted expressly or impliedly to protect the area.

It is, however, contended that there are no facts alleged in the petition showing any contract, express or implied, between the defendant, or its grantor, and the city. The petition is largely drawn upon the incorrect theory that the defendant would be liable for defects in an ordinary sidewalk adjoining his premises, without notice from the city, and without a demand by the city that such defects be repaired. The petition, however, also alleges that the defendant "caused and permitted a public nuisance on said walk as follows, to wit: That on the south side of said Jackson street, and adjoining said property herein described, there was on the 6th day of January, 1903, a slag-stone sidewalk, running from Fourteenth street to Fifteenth street, along the north front of said Thurston hotel; * * * that in said slag-stone sidewalk there had been ever since the construction of said hotel building several holes through the sidewalk; * * * that said opening in said sidewalk was a coal hole which opened into an excavation some eight or ten feet in depth under said sidewalk, which excavation was constructed at the time of the construction of said building in 1888, and was for the benefit and use and accommodation of said building and the owners and occupants thereof; that underneath said sidewalk the ground was entirely removed to the extent of eight or ten feet in depth, and the space underneath said sidewalk constituted a room or areaway

for the use and benefit of the said premises, and was connected with the said hotel building proper; that the coal hole through the sidewalk complained of was constructed and maintained for the use and benefit of said premises, the owners and occupants thereof; * * * that, to render said sidewalk safe at the point where said coal hole was constructed in the walk, it was necessary to place an iron cover over the opening, which fitted securely into the sidewalk and on a level with the walk, and to fasten said covering in such a way that it could not and would not be removed from said opening, leaving said opening exposed, except when said coal hole was being used for some purpose in connection with the hotel, and properly guarded during the time," and it was the duty of the defendants to "maintain in a safe condition * * * said coal hole leading to the excavation underneath the said sidewalk; but, disregarding their duties therein, they permitted said coal hole for a long time prior to said accident to become and remain in an unsafe and dangerous condition, in that there was no proper covering over said coal hole, and the cover, such as it was, was not fastened, and was likely to be blown off or removed therefrom by persons passing along the sidewalk." The answer to these allegations was that the holes through the covering of the area were made "long prior to the time when this defendant became the owner of said premises, with the knowledge and consent of the plaintiff, and without any knowledge thereof by this defendant, and that said holes were covered over prior to the time when this defendant became owner of said premises by or with the knowledge and acquiescence of the plaintiff, and were not in use at the time this defendant became the owner of said premises, or at any time thereafter." These allegations of the petition sufficiently present the issue as to the duty of the defendant to maintain proper and safe covering of this area.

The trial court made a general finding in favor of the city and against the defendant. It must be presumed that the court found that, in maintaining this area as the de-

fendant did after the purchase of the property, it did so with the implied agreement to maintain it in a proper and safe condition. In this view of the case, the judgment of the trial court is sustained by the evidence, and is therefore

AFFIRMED.