MARTHA CAMPBELL, APPELLEE, V. BRANDEIS INVESTMENT COMPANY: J. L. BRANDEIS & SONS, APPELLANT.

FILED APRIL 10, 1931. No. 27640.

*Kennedy, Holland, DeLacy & McLaughlin* and *Dykes & Story,* for appellant.

*Milton R. Abrahams* and *Richard A. O'Connor, contra.*

Heard before GOSS, C. J., ROSE, DEAN, GOOD, EBERLY, DAY and PAINE, JJ.

DEAN, J.

This personal injury action was begun in the district court for Douglas county by Martha Campbell, plaintiff, against J. L. Brandeis & Sons, hereinafter called the defendant, and H. A. Wolf & Company and the Brandeis Investment Company. The action was dismissed as to H. A. Wolf & Company and the Brandeis Investment Company, but, in respect of the J. L. Brandeis & Sons company, the action was submitted to the jury and a verdict was returned against the company and in favor of plaintiff for $10,000, upon which the court rendered judgment. The defendant has appealed.

In August, 1909, the Omaha city council granted permission to the above named defendant "to construct and maintain a subway underneath Seventeenth street," and provision was made in the permit that:

"All pavements taken up in connection with any such subway shall be replaced by said J. L. Brandeis & Sons in good workmanlike condition, and any settling of the street surface caused by such construction shall be repaired and the surface of the street restored and maintained in a proper condition for smooth surface pavement."

The Brandeis store is located on the southeast corner of Seventeenth and Douglas streets, and the Brandeis theatre building is located on the southwest corner. The two buildings are connected by a subway that was constructed pursuant to the city ordinance hereinbefore referred to. After the construction of the subway, the street surface water seeped into the Brandeis store space, lo-

cated in the subway, in such quantity that it became necessary to remove the sidewalk which was built over such subway and to resurface it with asphalt and cement. From the evidence it appears that, after the asphalt covering was laid, a two-inch drop occurred and the condition of the sidewalk became "jagged and cracked."

The plaintiff in substance testified that, on February 2, 1929, while she was walking on the sidewalk above the subway, she stepped upon a portion of the sidewalk near the curb that had been cracked and that the defendant had previously removed and replaced. The sidewalk at this point was constructed on an abrupt or sharp grade and, at the time in question here, it was covered with ice and snow upon which the plaintiff slipped and fell. She alleged that, as a natural consequence of the fall, she sustained severe injuries to the muscles and ligaments of her left leg, her left wrist, her left arm, her left shoulder, and her left hip, and that, in direct consequence of such fall, she was compelled to go to a hospital for eleven days and was thereafter compelled to remain in bed for eight weeks, and for five months thereafter she was unable to move about without the aid of crutches.

The defendant contends that the plaintiff slipped on the ice after she had stepped from the curb to the street. But we think there is sufficient corroboration of plaintiff's testimony to show that she fell to the street after her foot had slipped into the depression on the sidewalk and before she had stepped from the curb to the street. It was clearly defendant's duty to repair such settling as may have occurred in the sidewalk because of the removal thereof after the subway was constructed and to at all times maintain it in the proper condition. While the ordinance permitting the defendant to construct the subway provides that the defendant shall maintain the "street" surface in a proper condition after the removal of the pavement, we think that such language embraces and includes the sidewalks or any public thoroughfares that were affected by the construction of such subway.

In *James v. City of Portage*, 48 Wis. 677, the court said: "If, then, a street in a city is adopted or laid out and opened as a public highway for all kinds of travel thereon, and, without any direction or interference of the city or its authorities, a portion thereof alongside of the part used for teams and carriages is used by the people who travel on foot as a footway or sidewalk, that part so used becomes as much a part of the traveled part of such street as that used for the passage of teams and carriages." And in *Marini v. Graham*, 67 Cal. 130, the court held: "The sidewalks of a public street of a city are parts of the street, and the obstruction thereof is a public nuisance."

In view of the fact that the defendant was granted permission to construct the subway upon condition that the surface should be maintained in a proper condition, and where the evidence shows that the ordinance granting such permission was not complied with, the defendant is liable in damages to plaintiff for injuries she sustained when she fell on the sidewalk above the subway. *City of Omaha v. Philadelphia Mortgage & Trust Co.*, 88 Neb. 519; *Jenree v. State Railway Co.*, 86 Kan. 479; *Fowler v. Chicago Railways Co.*, 285 Ill. 196; *Pennsylvania and Ohio Canal Co. v. Graham*, 63 Pa. St. 290; *McMahon v. Second Avenue R. Co.*, 75 N. Y. 231.

Counsel for defendant filed affidavits wherein they alleged that certain of the jurors had been seen when examining the sidewalk. Plaintiff's counsel filed a counter affidavit wherein he stated that defendant's counsel had told him about the incident during the course of the trial. Under the circumstances, however, where defendant's counsel failed to advise the court during the trial, and before the evidence was all submitted, that the jurors had examined the sidewalk, the court did not err in overruling defendant's motion for a new trial. *Consolidated Ice-Machine Co. v. Trenton Hygeian Ice Co.*, 57 Fed. 898; *Very v. Willi*, 293 S. W. (Mo. App.) 500.

Defendant complains that the verdict is excessive, but, in view of the evidence, we do not think so. The evidence shows that plaintiff was about 50 years of age at the time

of the accident, and that, in her occupation as a cook, she was earning $30 a week, and because of the injuries she sustained the loss of her earnings during the time in question amounted to more than $2,000. And the plaintiff testified that she was unable to continue in her occupation and do acceptable service as a cook because of her injuries. It may be added that the evidence discloses that her injuries are permanent. In view of the facts, we decline to disturb the verdict. Other assignments of alleged error have been pointed out by the defendant, but reversible error has not been shown.

The judgment is therefore

AFFIRMED.